**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Millennium Auto Sales LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Pacific Specialty Insurance Company, et al.,<br><br>    Defendants. | No. CV-20-00322-PHX-JAT<br><br>**ORDER** |

At issue is Defendant Pacific Specialty Insurance Company's ("PSIC") Motion for Summary Judgment (Doc. 35) and Plaintiff Millennium Auto Sales, LLC's ("Millennium") Motion for Partial Summary Judgment (Doc. 36). The Court now rules on these Motions.

## I.    FACTUAL BACKGROUND

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### a.  The Insurance Policy

PSIC issued a twelve-month Used Car Dealer Insurance Policy (the "Policy") to Millennium on February 1, 2013, generally providing coverage and mandating a duty to defend for bodily injury and property damage that occurs onsite. (Doc. 1-1 at 5, ¶ 8; Doc. 35-6 at 3). The Policy includes a general exclusion for "[a]ny obligation or responsibility assumed under any contract or agreement…." (Doc. 35-6 at 3).

As relevant here, the Policy also includes "Section E – Truth in Lending/Federal Odometer Statute Errors and Omissions Coverage." (Doc. 35-6 at 8). The Federal

Odometer Statute provision (the "Odometer Endorsement") reads:

> ***The Company shall pay on behalf of the named insured all sums which the named insured shall become legally obligated to pay as damages solely by operation of Title IV, Odometer Requirements of the Motor Vehicle Information and Cost Savings Act (Public Law 103-272; 108 Stat. 745) because of error or omission committed by the Insured in failing to comply with said Act.*** The obligation of the Company hereunder shall be limited to the amount of coverage shown in Section I on the Policy Declarations, up to $100,000 for the aggregate total of payments for damages arising from acts, errors or omissions committed during the term of the policy. ***The Company may defend any suit against the named insured seeking damages on account of such error or omission, even if any of the allegations in the suit are groundless or fraudulent.*** The Company may make such investigation and settlement of any claim as the Company deems appropriate. ***This insurance does not apply to, and the Company shall have no duty to defend, any liability arising out of any dishonest, fraudulent, criminal or intentional act(s) committed by the named insured***, any of the partners, officers, employees or agents of the named insured or other party in interest acting alone or in collusion with others.

(Doc. 35-6 at 8) (emphasis added).[1] Millennium renewed the Policy on February 1, 2014, for an additional twelve months. (*Id.*)

### b. Dealer Agreement with Gateway One Lending & Finance, LLC

Beginning on October 9, 2009, Millennium entered into a Dealer Agreement with Gateway One Lending & Finance, LLC ("Gateway") by which Millennium assigned Motor Vehicle Retail Installment Sales Contracts ("RISCs"), as between Millennium and financing car buyers, to Gateway. (Doc. 1-1 at 6, ¶ 13). As relevant here, Paragraph 5 of the Dealer Agreement sets forth Millennium's representations and warranties to Gateway as follows:

> As to each [RISC] sold by [Millennium] to [Gateway], [Millennium] warrants and represents that, as of the time of such sale and as of the date the [RISC] is purchased by

---

[1] The statute identified in the Odometer Endorsement, "Title IV, Odometer Requirements of the Motor Vehicle Information and Cost Savings Act (Public Law 103-272; 108 Stat. 745)" currently appears at 49 U.S.C. § 32701, *et seq.* (the "Odometer Act").

> [Gateway]:
> 
>   a. [Millennium] has satisfied all requirements of … federal, state, local and other laws, regulations or rules applicable to the sale of the Vehicle, the extension of credit or consumer protection or otherwise to the [RISC];
> 
>   …
> 
>   f. The [RISC] is valid and enforceable according to its terms;
> 
>   …
> 
>   h. [Millennium] does not know of any fact which indicates the uncollectability of the [RISC];
> 
>   …
> 
>   k. The property, goods, and services sold to Buyer are fully and correctly described in the [RISC] and related documents;
> 
>   …
> 
>   q. [Millennium] has fully complied with, and the [RISC] is valid under, any and all applicable laws, rules, and regulations of the federal government or any state or other governmental agency or authority regulating consumer or installment credit transactions;
> 
>   r. None of the Vehicles described in the [RISC] will be subject to certificates of title reflecting a status of … warning-not actual mileage, or similar condition noted on the certificate of title.

(Doc. 35-3 at 3, 7–8). Paragraph 6 of the Dealer Agreement sets forth Millennium's liabilities for breach of the contract, including the representations and warranties set forth in Paragraph 5. (*Id.* at 8–9). As relevant here, the Dealer Agreement states that if Millennium breaches any provision of or otherwise fails to perform any obligation under the Dealer Agreement or "if the Buyer asserts a claim for recission" under the RISC, Millennium will pay Gateway any unpaid balances of the RISC and "all damages, losses, and expenses paid or incurred" by Gateway as a result, including court costs and attorney's fees. (*Id.* at 8).

### c.  Torrence Martin's Vehicle and Subsequent Gateway Litigation

On December 10, 2014, during the renewal term of the Policy, Millennium

purchased a vehicle ("the Vehicle") from Metro Auction with an accompanying odometer statement that reflected the Vehicle's mileage as 104,000 miles.[2] (Doc. 1-1 at 6, ¶ 14). Four days later, Millennium entered into a RISC with Torrence Martin for the Vehicle, which Millennium subsequently assigned to Gateway under the Dealer Agreement. (*Id.*) In early 2016, Mr. Martin filed a lawsuit against Gateway "in which he claims that his [RISC] is unenforceable because Millennium [] misrepresented the Vehicle's actual mileage or otherwise violated federal and state odometer laws." (*Id.* at 6–7, ¶ 16; Doc. 35-3 at 4, ¶ 10). In response, Gateway demanded Millennium pay the outstanding balance of Mr. Martin's RISC. (Doc. 1-1 at 6–7, ¶ 16; Doc. 35-7 at 2–3). Millennium allegedly refused to pay. (Doc. 35-3 at 5, ¶ 15).

On August 19, 2016, after Millennium's failure to resolve the issue with Gateway, Gateway terminated the Dealer Agreement and sued Millennium for breach of contract ("the Gateway lawsuit") based at least in part on Mr. Martin's lawsuit alleging a failure to comply with the applicable state and federal odometer laws. (Doc. 1-1 at 8, ¶ 20; Doc. 35-3 at 4, ¶¶ 8–12).

### d. Millennium's Insurance Claim

On February 29, 2016, after Gateway's first demand for payment, Robert Block, on behalf of Millennium, contacted PSIC seeking defense and indemnity for Gateway's demand. (Doc. 1-1 at 7, ¶ 18–19; *see* Doc. 35-8). On March 14, 2016, PSIC declined "to provide a defense and/or indemnity" for Millennium because, according to PSIC, "there has been no bodily injury or physical damage, [as required under the Policy's duty to defend provisions], and because this arises from an obligation or responsibility assumed

---

[2] At some time prior to procuring the Vehicle, Millennium's CEO, Paul Jones, alleges that he identified a Car Fax Report indicating the mileage on the vehicle was 167,000, not 104,000. (Doc. 1-1 at 6, ¶ 15). Mr. Jones, however, alleges that he determined the Car Fax Report incorrectly conflated kilometers with miles, such that the 104,000 miles listed on the Vehicle's odometer statement was accurate at the time of sale to Mr. Martin. (*Id.*) Regardless, the Gateway lawsuit alleges that "[t]he Certificate of Titled issued by the Arizona Department of Transportation – Motor Vehicle Division for the Vehicle bears an odometer code of "C – NOT Actual Mileage, WARNING ODOMETER DISCREPANCY." (Doc. 35-3 at 4, ¶ 11).

under a contract," for which there is no coverage. (Doc. 35-9 at 4).

After Gateway filed its lawsuit, Mr. Block provided notice to PSIC and again tendered Millennium's defense under the Policy. (Doc. 1-1 at 8, ¶ 21). On September 6, 2016, PSIC again declined coverage under the Policy and refused to defend and indemnify Millennium in the Gateway lawsuit. (*Id.* at 9, ¶ 22). Specifically, PSIC stated the following reasons for denying coverage, defense, and indemnity:

> The language in the lawsuit alleges that Millennium misrepresented the odometer mileage when it entered into a sales contract with the buyer of a Lincoln Navigator, Torrence Martin. Because the odometer amount was misrepresented, Mr. Martin was able to void the contract and has left the amount unpaid. This misrepresentation was a violation of the contract between Millennium and [Gateway], therefore [Gateway] is asking for payment from Millennium to recover the remaining unpaid amounts.
>
> Please note the policy contains an exclusion for any obligation or responsibility assumed under any contract or agreement. The main allegation in the lawsuit relates to your liability arising out of the contract between Millennium and [Gateway]. That is clearly excluded under your insurance policy. Additionally, the Federal odometer coverage excludes any liability arising out of dishonest or intentional acts. The allegation is that you misrepresented the odometer amount on the sales contract, despite the DMV report on the mileage. Therefore, because this lawsuit arises from excluded acts, there is no coverage for this claim or for a defense related to the excluded claim.

(Doc. 35-10 at 3).

Following PSIC's denial of coverage, Millennium retained its own counsel to represent it in the Gateway lawsuit, which ultimately led to a default judgment against Millennium. (Doc. 1-1 at 9, ¶ 23; *see* Doc. 37-1). On October 23, 2017, Mr. Block, again on behalf of Millennium, provided notice of the default to PSIC and requested reconsideration of the denial of coverage and sought PSIC's defense to set aside the default judgment. (*Id.* at 9–10, ¶ 24). On the same day, PSIC responded that it was reviewing Millennium's claim but ultimately did not change its decision. (*Id.* at 10, ¶ 25). Millennium

subsequently retained new counsel to set aside the default, but the court affirmed the original decision. (*Id.* at 10, ¶ 26). On February 27, 2019, Mr. Block again contacted PSIC to seek reconsideration of the denial. (*Id.* at 10–11, ¶ 27). PSIC continues to deny coverage under the Policy. (*Id.* at 11, ¶ 28).

## II. PROCEDURAL BACKGROUND

On October 16, 2019, Millennium sued PSIC in Maricopa County Superior Court, asserting claims of bad faith and breach of contract. (Doc. 1-1 at 4, 12–16). On February 12, 2020, PSIC removed the case to this Court on diversity jurisdiction grounds pursuant to 28 U.S.C. § 1441(b). The Parties have both moved for summary judgment. (Docs. 35 and 36).

## III. LEGAL STANDARD

### a. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations ... admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A-B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue

that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

### b. Insurance Policy Interpretation

The tenets of insurance policy contract interpretation are well-established. Generally, "[t]he interpretation of an insurance contract is a question of law" for the Court. *Liristis v. Am. Family Mut. Ins. Co.*, 61 P.3d 22, 26 (Ariz. Ct. App. 2002) (citation omitted). An insurance policy "must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Charbonneau v. Blue Cross*, 634 P.2d 972, 975 (Ariz. Ct. App. 1981) (citation omitted). The Court must "construe the written terms of [the policy] to effectuate the parties' intent," and "to protect the reasonable expectations of the insured," *Liberty Ins. Underwriters, Inc. v. Weitz Co.*, 158 P.3d 209, 212 (Ariz. Ct. App. 2007) (citations omitted), and the policy's language "must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance." *Liristis*, 61 P.3d at 25–26 (citation omitted). Where the language of the policy is clear, the Court shall "afford

it its plain and ordinary meaning and apply it as written." *Liberty Ins. Underwriters, Inc.*, 158 P.3d at 212 (citation omitted). If ambiguity exists after considering the plain and ordinary meaning of the policy language, Arizona courts turn to consideration of the "legislative goals, social policy, and the transaction as a whole." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1110 (Ariz. 2008).

In other words, "[i]n the insurer/insured context, ... Arizona's public policy favors insureds. Hence Arizona law requires that undefined terms be given the meaning used by laypeople in everyday usage and that terms and provisions that remain ambiguous after all relevant considerations be interpreted in favor of coverage and against the insurer." *Young v. Owners Ins. Co.*, No. CV-20-08077-PCT-DWL, 2021 WL 6503853, at *3 (D. Ariz. Dec. 17, 2021) (quoting *Equity Income Partners, LP v. Chicago Title Ins. Co.*, 387 P.3d 1263, 1268 (Ariz. 2017)).

However, "[i]nterpretation of a contract is [only] a question of law for the court when its terms are unambiguous on its face." *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. Ct. App. 1975); *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993). "[I]f there are ambiguities and it is necessary to consider the circumstances in determining its meaning, it is a question for the trier of fact to determine what those circumstances were." *Ash*, 541 P.2d at 401; *see also In re Bataa/Kierland LLC*, 496 B.R. 183, 192 (D. Ariz. 2013) ("Where there is an ambiguity, the trier of fact must determine 'the intent of the parties, based on extrinsic evidence.'" (quoting *Leo Eisenberg & Co., Inc. v. Payson*, 785 P.2d 49, 52 (Ariz. 1989)).

"Under Arizona law, a contract is not ambiguous merely because the parties cannot agree to its meaning; rather, an agreement is ambiguous only if the language can reasonably be construed in more than one sense and the interpretation cannot be determined within the four corners of the instrument." *In re Bataa/Kierland LLC*, 496 B.R. at 192 (citing *D. Land Co. v. Killian*, 762 P.2d 124, 126 (Ariz. Ct. App. 1988); *Richards Dev. Co. v. Sligh*, 358 P.2d 329, 330 (Ariz. 1961)). "That is, language is not ambiguous just because it is vague or general, but because it lends itself to two or more contradictory meanings." *Young*, 2021

WL 6503853, at *3 (citations omitted). "The court thus applies a 'standard of reasonableness' in determining whether language is susceptible to more than one interpretation." *Farnam Companies, Inc. v. Stabar Enterprises, Inc.*, No. CV 03-503-PHX-NVW, 2005 WL 3369473, at *4 (D. Ariz. Dec. 12, 2005) (citing *Gesina v. General Elec. Co.*, 780 P.2d 1380, 1386 (Ariz. Ct. App. 1988).

## IV. PSIC'S MOTION FOR SUMMARY JUDGMENT

The underlying dispute here is whether the Policy provided coverage for Millennium's claim, defense, and indemnity in the Gateway lawsuit under the Odometer Endorsement, which provides coverage for damages arising "solely by operation" of federal and state odometer laws. (Doc. 35 at 6). In other words, the root of both motions for summary judgment requires an interpretation of the Odometer Endorsement and a determination of whether the claims alleged in the Gateway lawsuit fall within it. (Doc 35 at 10; Doc. 36 at 1).

### A. Duty to Defend Under the Odometer Endorsement

PSIC has two arguments for why it had no duty to defend Millennium in the Gateway lawsuit as a matter of law: (1) the Odometer Endorsement does not mandate a duty to defend; and (2) if a duty to defend is mandated by the Odometer Endorsement, the Gateway lawsuit does not allege claims that trigger coverage under that endorsement. The Court addresses the arguments in turn.

#### a. Discretionary Duty to Defend and Equitable Estoppel

PSIC first contends that it did not owe a duty to defend Millennium against the Gateway lawsuit because the Odometer Endorsement uses discretionary language regarding PSIC's duty to defend Millennium. (Doc. 35 at 8). In particular, PSIC points to the phrase "[PSIC] may defend any suit against the named insured" (Doc. 35-6 at 8) to support its position that PSIC had "the right, but not the duty, to defend Plaintiff" (Doc. 35 at 8).

Millennium responds that PSIC should be estopped from arguing that the Odometer Endorsement does not mandate a duty to defend because PSIC did not assert this as a reason

to deny coverage in its prior noncoverage decision letters. (Doc. 38 at 10). Millennium contends that it relied on PSIC's previously asserted reasons for noncoverage to its detriment because, had it known that PSIC was contesting its duty to defend instead of denying coverage based on the stated policy exclusions, Millennium would have let the judgment go into default without incurring attorney's fees. (Doc. 38 at 11). The incurred attorney's fees appear to be the injury Millennium alleges under its estoppel theory.

PSIC's Reply contests the application of equitable estoppel, arguing that the case on which Millennium relies, *Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcontinental Ins. Co.*, is applicable only in cases where the insurer undertakes a defense and does not expressly reserve its rights to later deny coverage. (Doc. 40 at 4–5). PSIC also points out that, although its current argument was not stated in its noncoverage letters, both letters expressly reserved its rights "to deny coverage based on any policy provision, coverage or contract issue in relation to this matter, whether or not contained herein." (Doc. 40 at 5 citing Doc. 35-10 at 4).

At the outset, the Court considers whether the issues raised by Millennium's estoppel argument are properly resolved by the Court or a jury. The Ninth Circuit has held that, in diversity cases, because "equitable estoppel was originally available only in courts of equity, it is equitable in nature and, therefore, except for any issues which may be common to [the parties'] legal claims, [any] equitable estoppel defense presents issues to be resolved by the court." *Granite State Ins. Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996). Regarding the commonality of the parties' legal claims and Millennium's estoppel argument, the Court finds no common issues. Millennium's Complaint asserts claims for bad faith and breach of the insurance policy contract for PSIC's failure to defend and indemnify Millennium in the Gateway lawsuit. (Doc. 1-1 at 12, 15). Millennium's estoppel argument seeks to preclude PSIC from raising an additional reason for denial of coverage than those asserted in PSIC's denial letter. However, the underlying issues to be decided by the Court regarding the estoppel argument do not touch on the main issues in the case, namely, whether PSIC breached the contract or acted in bad

1    faith.³ Instead, the Court must decide whether equitable estoppel is available to Millennium
2    and whether it reasonably relied on PSIC's denial letter in incurring legal fees in the
3    Gateway lawsuit based on PSIC's stated reasons to deny coverage. Thus, there are no
4    common factual issues between Millennium's estoppel argument and Millennium's claims
5    in the complaint or PSIC's arguments on summary judgment that would require
6    Millennium's estoppel argument to be resolved by a jury..

7    Turning to the substantive issue, "[e]quitable estoppel applies if (1) the party to be
8    estopped intentionally or negligently induces another to believe certain material facts, (2)
9    the induced party takes action in reliance on its reasonable belief of those facts and (3) the
10   induced party is injured by so relying." *Pueblo Santa Fe Townhomes Owners' Ass'n v.
11   Transcontinental Ins. Co.*, 178 P.3d 485, 493 (Ariz. Ct. App. 2008) (citing *Joy Enters., Inc.
12   v. Reppel*, 537 P.2d 591, 594 (Ariz. 1975)). Moreover, the alleged injury or prejudice "must
13   be actual and substantial, and not merely technical or formal." *Weiner v. Romley*, 381 P.2d
14   581, 583 (Ariz. 1963). "Prejudice may be shown through loss of a favorable settlement of
15   the case, inability to produce any material witness, loss of the benefit of any defense in law
16   or fact through reliance upon the insurer's [promise] to defend, or withdrawal by the insurer
17   so near in time to trial that the insured is unable to prepare his defense." *Pueblo*, 178 P.3d
18   at 496 (citing *R.A. Hanson Co. v. Aetna Casualty & Surety Co.*, 550 P.2d 701, 703 (Wash.
19   App. 1976)).

20   The Court agrees with PSIC that the only case Millennium cites for its equitable
21   estoppel argument is distinguishable from this case. *See Pueblo*, 178 P.3d 485. In *Pueblo*,
22   the Arizona Court of Appeals determined the insurer was estopped from denying coverage
23   of the insureds because the insurer assumed the insured's defense for eighteen months
24   without reserving any rights to later deny coverage and the insureds relied on the insurer's
25   assumption of their defense to their detriment. *Id.* at 493–96. In so finding, the court
26   explained that the insureds were prejudiced because they lacked the opportunity to
27   participate in their own defense to the lawsuit. *Id.* at 495. Here, Millennium admits that it

---

³ Nor are there common issues between the estoppel argument and PSIC's asserted interpretation that the Odometer Endorsement does not mandate at duty to defend.

took control of its own defense in the Gateway lawsuit and retained its own counsel after receiving PSIC's noncoverage letters. Thus, the Court finds *Pueblo* and its application of estoppel inapposite to this case. Millennium cites to no other cases, nor is the Court aware of any, that support its contention that estoppel applies under these facts.

Moreover, the Court finds that Plaintiff fails to sufficiently articulate reasonable reliance on PSIC's noncoverage letters. Plaintiff's reliance was not reasonable because, as explained above, PSIC's letters both expressly reserved the right to raise future coverage defenses. Although Plaintiff argues that it would not have retained counsel in the Gateway lawsuit with knowledge of PSIC's current position that any duty to defend under the Policy was discretionary, the Court finds that in view of the terms of the Policy and the reservation of rights in the denial letters, such a position of reliance is unreasonable. *See Guberman v. William Penn Life Ins. Co.*, 538 N.Y.S.2d 571, 574 (N.Y. App. Div. 1989) ("Where the insurer expressly states that its assertion of one defense should not be construed as a waiver of other defenses, it is difficult to imagine how, if at all, the plaintiff could have been misled into acting on a reasonable belief that the company had waived some provision of the policy.") (quotations omitted).

Accordingly, the Court finds that estoppel does not apply to preclude PSIC from raising its current defense that it merely had a right, and not a duty, to defend Millennium in the Gateway lawsuit.

> Turning to the language of the Odometer Endorsement, it reads in relevant part:
>> The Company shall pay on behalf of the named insured all sums which the named insured shall become legally obligated to pay as damages solely by operation of Title IV, Odometer Requirements of the Motor Vehicle Information and Cost Savings Act (Public Law 103-272; 108 Stat. 745) because of error or omission committed by the Insured in failing to comply with said Act.… ***The Company may defend any suit against the named insured seeking damages on account of such error or omission, even if any of the allegations in the suit are groundless or fraudulent***…. This insurance does not apply to, and ***the Company shall have no duty to defend, any liability arising out of any dishonest, fraudulent, criminal or intentional act(s) committed by the named insured***, any of the

> partners, officers, employees or agents of the named insured or
> other party in interest acting alone or in collusion with others.

(Doc. 35-6 at 8) (emphasis added). The Court notes that the Odometer Endorsement does use the discretionary term "may" with respect to defending lawsuits seeking damages for "error or omission committed by the Insured in failing to comply with" the Odometer Act. (*Id.*) This language appears to suggest that PSIC did not have an affirmative duty to defend Millennium and that it instead had the option to do so. *See Oxford English Dictionary* (3rd ed. 2001) (defining "may" as "a possibility"); *see also W. Corr. Grp., Inc. v. Tierney*, 96 P.3d 1070, 1074 (Ariz. Ct. App. 2004) ("To determine the plain meaning of a term, [courts] refer to established and widely used dictionaries.").

However, the next sentence in the above quote is an exclusionary one, stating that if the liability arises "out of any dishonest, fraudulent, criminal or intentional act(s) committed by the named insured," then "the Company shall have no duty to defend." (*Id.*) This exclusion appears to suggest by implication that if there are no dishonest, fraudulent, criminal or intentional acts, PSIC would have a duty to defend Millennium. Such an interpretation is consistent with the well-established Arizona law that "an insurer typically owes… a duty to defend the insured against any claim 'potentially covered by the policy.'" *Pueblo*, 178 P.3d at 491 (quoting *United Services Automobile Ass'n v. Morris*, 741 P.2d 246, 250 (Ariz. 1987)).

Moreover, insurance policies must be interpreted in a way that read as a whole give "reasonable and harmonious meaning and effect to all its provisions." *National Bank v. St. Paul Fire & Marine Ins. Co.*, 975 P.2d 711, 714 (Ariz. Ct. App. 1999) (quoting *Federal Ins. Co. v. P.A.T. Homes, Inc.*, 547 P.2d 1050, 1053 (Ariz. 1976)). PSIC's interpretation would render the exclusionary clause of the Odometer Endorsement virtually meaningless if PSIC reserved unfettered discretion to decide to defend the insured for any reason, including dishonest or fraudulent acts, through its use of "may" in the preceding sentence. On the other hand, requiring PSIC to have an absolute duty to defend would render the discretionary language in the clause similarly meaningless. "The Court is required to

interpret insurance policies in such a way that each provision is given meaning." *Team 44 Restaurants LLC v. American Insurance Company*, No. CV-21-00404-PHX-DJH, 2021 WL 4775106, at *5 (D. Ariz. Oct. 13, 2021) (citing *Liberty Ins. Underwriters, Inc. v. Weitz Co.*, 158 P.3d 209, 212 (Ariz. Ct. App. 2007)).

As such, the inconsistency of these two statements renders the applicability of a duty to defend in this case ambiguous and the Court cannot decide as a matter of law whether the provision imposes a duty to defend on PSIC. *In re Bataa/Kierland LLC*, 496 B.R. at 192 ("Where there is an ambiguity, the trier of fact must determine the intent of the parties, based on extrinsic evidence.") (quotations omitted).

### b. Scope of PSIC's Duty to Defend

PSIC also argues that the language of the Odometer Endorsement excludes coverage for the Gateway lawsuit so any duty to defend was not triggered. (Doc. 35 at 10). Specifically, PSIC argues that the phrase "solely by operation of" in the Odometer Endorsement requires that any cause of action must specifically claim damages under the Odometer Act itself. (*Id.* at 11). PSIC cites to several cases interpreting the phrase "solely by operation" in other contract interpretation contexts. (*Id.* at 12–14). Millennium responds that PSIC's duty to defend was triggered by the facts asserted in the Gateway lawsuit. (Doc. 38 at 11). Specifically, Millennium contends that the Odometer Endorsement covered the Gateway lawsuit because Gateway's breach of contract claims stem from Millennium's violation of the Odometer Act in selling the Vehicle to Mr. Martin. (Doc. 38 at 11–14). Because PSIC failed to defend Millennium in the underlying Gateway lawsuit, Millennium asserts that PSIC breached the insurance contract and the implied covenant of good faith and fair dealing. (Doc. 1-1 at 12, 15).

### i. Triggering Duty to Defend

The Arizona Supreme Court has held that "there is no absolute duty to defend" an insured, regardless of the claims alleged. *Kepner v. Western Fire Ins. Co.*, 509 P.2d 222, 224 (Ariz. 1973); *see also U.S. Fidelity & Guar. Corp. v. Advance Roofing & Supply Co., Inc.*, 788 P.2d 1227, 1231 (Ariz. Ct. App. 1989) (describing *Kepner* as "[t]he leading

Arizona decision relating to an insurer's duty to defend"). Rather, "generally," where "the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy," then "the insurer is obligated to assume defense of the action, but if the alleged facts fail to bring the case within the policy coverage," then "the insurer is free of such obligation." *Kepner*, 509 P.2d at 224 (citations omitted); *see also Quihuis v. State Farm Mut. Auto. Ins. Co.*, 334 P.3d 719, 727 (Ariz. 2014). The Arizona Supreme Court went on to state that "the duty to defend should focus upon the facts rather than upon the allegations of the complaint which may or may not control the ultimate determination of liability," but couched the statement by noting that only in some cases would the pleading not serve as the "the decisive factor in determining whether there exists a duty" to defend. *Kepner*, 509 P.2d at 224. Moreover, the Arizona Supreme Court has also intimated that the insurer has the option to decline to defend the insured based on factual allegations contained in the complaint, albeit at its own risk. *Quihuis*, 334 P.3d at 729; *Kepner*, 509 P.2d at 332. The relevant Odometer Endorsement language reads:

> [PSIC] shall pay on behalf of [Millennium] all sums which [Millennium] shall become legally obligated to pay as damages ***solely by operation of*** Title IV, Odometer Requirements of the Motor Vehicle Information and Cost Savings Act (Public Law 103-272; 108 Stat. 745) because of error or omission committed by [Millennium] in failing to comply with said Act."

(Doc. 35-6 at 8) (emphasis added). The cited Odometer Act, presently codified at 49 U.S.C. § 32701, *et seq.*, provides civil and criminal liability for various types of odometer tampering and mileage misrepresentation related to the sale of used motor vehicles. As relevant here, the Odometer Act sets forth odometer disclosure requirements for a seller transferring ownership of a vehicle to a buyer, including that "[a] person transferring ownership of a motor vehicle may not…give a false statement to the transferee in making the disclosure" of the vehicle's actual mileage. 49 U.S.C. § 32705(a)(2). If violated, the Odometer Act provides for both governmental enforcement and civil actions brought by private persons. 49 U.S.C. §§ 32709, 32710.

The parties have not cited to any cases, and the Court is not aware of any, using

Arizona law to interpret the statutory language at issue here. Instead, PSIC relies on cases from other jurisdictions interpreting "solely by operation of" or similar language in insurance contracts. (*See* Doc. 35 at 10–14). Millennium did not provide any response to PSIC's argument on the interpretation of "solely by operation of," other than its reasonable expectations argument discussed below.

In *TIG Ins. Co. v. Joe Rizza Lincoln-Mercury*, a Northern District of Illinois Court interpreted a similar clause[4] under Illinois law and held that "the narrow coverage provided by the Endorsement is triggered only by a damage claim under the Truth In Lending Act. If, and only if, the claimant seeks damage under the Act is there potential coverage." No. 00-C-5182, 2002 WL 406982, at *9 (N.D. Ill. Mar. 14, 2002). The *TIG* court held that the contract language was unambiguous and cited to several decisions of other courts reaching the same outcome. *Id.*, 2002 WL 406982, at *8; *see also John Markel Ford, Inc. v. Auto-Owners Ins. Co.*, 543 N.W.2d 173 (Neb. 1996) (examining endorsement covering damages "brought solely under" Section 130 of the TILA and holding that coverage is limited to damages awarded under the TILA); *see also Heritage Mut. Ins. Co. v. Ricart Ford, Inc.*, 663 N.E.2d 1009 (Ohio 1995) (finding endorsement covering "damages solely due to Section 130" of TILA requires a complaint to seek Section 130 damages); *see also Tynan's Nissan Inc. v. American Hardware Mut. Ins. Co.*, 917 P.2d 321 (Colo. 1995) (reaching the same outcome for an endorsement containing the phrase "shall become legally obligated to pay as damages solely because of error or omission in failing to comply with § 130.").

Although the above cited cases deal with TILA endorsements and not the Odometer Act, the language used in the clauses is nearly identical. Thus, the Court finds these cases and their reasoning persuasive and so holds that the Odometer Endorsement of PSIC's policy is limited to damages awarded pursuant to the Odometer Act as a matter of law. *Ash*, 541 P.2d at 401 ("Interpretation of a contract is a question of law for the court when its terms are unambiguous on its face.") So, the Court now must determine whether PSIC's

---

[4] The clause at issue *TIG* reads: "We will pay all sums the 'insured' legally must pay as damages solely be (sic) operation of Section 130, Civil Liability, of Title 1 (Truth in Lending Act) of the Consumer Credit Protection Act (Public Law 90-321.82 Stat.146 et seq.)" *TIG*, 2002 WL 406982, at *2.

- 16 -

duty to defend was triggered based on the facts asserted in the Gateway lawsuit given the limited scope of the Odometer Endorsement.

Here, the Court has two layers of underlying lawsuits to consider. First, Mr. Martin filed a lawsuit against Gateway seeking recission of his RISC because of Millennium's alleged failure to abide by federal and state odometer laws. (Doc. 35-3 at 4). Second, the Gateway lawsuit seeks damages for Millennium's alleged breach of the Dealer Agreement based on the unenforceability of Mr. Martin's RISC. (*Id.*) Millennium appears to concede that neither of these lawsuits are asserting claims for damages under the Odometer Act. (Doc. 35-1 at 3–5). Instead, it is undisputed that both of the underlying lawsuits are breach of contract actions, and the Court finds that both fall outside the scope of the Odometer Endorsement's unambiguous language.

### ii. Implied Duty to Defend

Although not directly in response to PSIC's contract interpretation arguments, Millennium asserts that it "reasonably expected coverage for an alleged violation of the Federal Odometer Act," regardless of whether the allegations are styled as breach of contract or another type of claim. (Doc. 38 at 15). According to Millennium, "[t]his expectation would apply to any sale, including any financed sale, in which the contract for sale is assigned to the financing company, a standard practice in the industry." (*Id.*) PSIC disputes the application of the reasonable expectations doctrine here. (Doc. 40 at 6).

Under Arizona law, even unambiguous policy language will not be enforced against the insured if the insured had a reasonable expectation of coverage. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 396 (Ariz. 1984). The reasonable expectations doctrine stems from the covenant of good faith and fair dealing which is implied in every contract. *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 ¶ 13 (Ariz. Ct. App. 2002). This covenant "guarantees the protection of the parties' reasonable expectations," and is breached either "by exercising express discretion in a way inconsistent with a party's reasonable expectations [or] by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's

reasonably expected benefits of the bargain." *Id.* at 434–35 ¶¶ 13–14.

*Gordinier* clarified *Darner*, holding that Arizona's reasonable expectations doctrine only applies in the following limited situations:

> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;
>
> 2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
>
> 3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;
>
> 4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Gordinier*, 742 P.2d at 283–84. However, regardless of the circumstances, "an implied covenant of good faith and fair dealing cannot directly contradict an express contract term." *Bike Fashion Corp.*, 46 P.3d at 434-35 ¶ 14.

If no material issue of fact exists in a reasonable expectations case, the issue of whether the policy language should be strictly applied or is subject to the insured's reasonable expectations is a question of law for the Court to decide. *State Farm Mut. Auto. Ins. Co. v. Falness*, 39 F.3d 966, 967 (9th Cir. 1994). If there is a question of fact, then it is for the jury to decide whether the reasonable expectations doctrine is to be applied under the circumstances of the case.

Here, although asserting the reasonable expectations doctrine, Millennium does not provide the Court with any circumstances regarding its alleged expectation of coverage that would create a disputed issue of fact for the jury. The Court notes that during oral argument Millennium's counsel asserted that Mr. Jones's declaration sets forth the circumstances supporting application of the reasonable expectations doctrine here.

However, the Court reviewed both of Mr. Jones's filed declarations and found no mention of the circumstances giving rise to Millennium's alleged reasonable expectations of coverage other than Millennium's bare assertion that coverage existed under the Odometer Endorsement. (Doc. 36-1 at 3–4; *see also* Doc. 39-1).

So, while Millennium asserts that it understood the policy to provide coverage for any lawsuits related to violations of the Odometer Act, "[a]s pointed out in *State Farm Fire & Cas. Co. v. Powers*, 786 P.2d 1064, 1067 (Ariz. Ct. App. 1989), coverage cannot be defeated 'by simply putting the insured on the witness stand and asking him ... did you reasonably expect that you would be covered?' Without more, the reasonable expectations doctrine does not render [a policy clause] unenforceable." *Cooper v. American Family Mut. Ins. Co.*, 184 F.Supp.2d 960, 966 (D. Ariz. 2002). Moreover, Millennium's assertion that the implied covenant of good faith and fair dealing requires the Court to find coverage for all lawsuits including allegations of odometer tampering directly contradicts the express, unambiguous language of the Odometer Endorsement, as discussed above. Such an interpretation is not allowable under Arizona law. *Bike Fashion Corp.*, 46 P.3d at 434-35 ¶ 14.

### iii. Conclusion

Therefore, the Court GRANTS summary judgment, finding that PSIC did not have an affirmative duty to defend Millennium in the Gateway lawsuit because the Gateway lawsuit was not covered by the express terms of the Odometer Endorsement.

### B. **Duty to Indemnify and Bad Faith**

PSIC also argues that it owed no duty to indemnify Millennium for the Gateway lawsuit default judgment and that it cannot be liable for a bad faith denial of coverage because its decision to deny coverage was correct. (Doc. 35 at 14–15).

Having determined there is no coverage for Millennium's claim under the Policy as a matter of law, the Court need not reach the issues of whether PSIC had a duty to indemnify or acted in bad faith, because both theories as alleged in this case are contingent on the Court finding coverage under the policy.

## V. MILLENNIUM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

For its part, Millennium seeks a finding that, as a matter of law, PSIC had a duty to defend and indemnify Millennium in the Gateway lawsuit and because PSIC failed to do so, PSIC breached the insurance contract in bad faith. (Doc. 36 at 1, 15). Consistent with its position in its own Summary Judgment Motion, PSIC argues that the Odometer Endorsement does not mandate a duty to defend, and in the alternative, if a duty to defend is found within the policy, it was not triggered by the Gateway lawsuit. (Doc. 37 at 10–12).

The Court notes that for Millennium's motion, as the movant, Millennium has the burden to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), and PSIC, as the nonmovant, is entitled to the Court's construction of all disputed facts in its favor, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

For the reasons stated above, the Court finds no disputed issues of material fact on the issue of whether there was coverage under the policy. The Court having concluded there was no coverage under the policy, Millennium's Motion for Partial Summary Judgment is DENIED in its entirety.

## VI. CONCLUSION

Accordingly,

**IT IS ORDERED THAT** PSIC's Motion for Summary Judgment (Doc. 35) is **GRANTED**, as set forth above.

**IT IS FURTHER ORDERED THAT** Millennium's Motion for Partial Summary Judgment (Doc. 36) is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Clerk of the Court shall enter judgment, accordingly.

Dated this 18th day of May, 2022.

James A. Teilborg
Senior United States District Judge